1   Robert C Weems (CA SBN 148156)
    Margaret M. Weems (CA SBN 164030)
2   Brian N. Bercovitz (CA SBN 238521)
    WEEMS LAW OFFICES
3   769 Center Blvd., PMB 38
    Fairfax, CA 94930
4   Ph: 415.881.7653
    Fx: 866.610.1430
5     *rcweems@weemslawoffices.com*

6   Attorneys for Plaintiff
    Laura McNaboe
7

8

9        UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO/OAKLAND DIVISION

11

12   LAURA MCNABOE,              Case No.

13      Plaintiff,

14   v.                         **COMPLAINT AND REQUEST FOR
TRIAL BY JURY FOR DAMAGES
15   SAFEWAY INC., a Delaware corporation and   AGAINSTS EMPLOYER AND UNION
    LOCAL 5 OF THE UNITED FOOD AND       UNDER § 301 OF LMRA, FOR
16   COMMERCIAL WORKERS, an            COMPENSATORY DAMAGES FOR
    unincorporated association, and DOES 1-50     UNLAWFUL DISCHARGE AND
17                              BREACH OF UNION'S DUTY OF FAIR
     Defendants.               REPRESENTATION USC §185 AND
18                              RELATED COMPENSABLE TORTS**

19

20

21      Now comes plaintiff, LAURA MCNABOE ("Plaintiff" or MCNABOE), a 58 year old,

22 married woman, at all times relevant herein a resident of Marin County, California and a citizen

23 of the state of California and the United States of America, requesting a trial by jury. At all times

24 relevant to the matters alleged herein she was a dues paying member of Defendant LOCAL 5

25 UNITED FOODS AND COMMERCIAL WORKERS UNION ("UFCW#5" or "UNION"). On

26 or about April 16, 2012. Defendant SAFEWAY INC. ("SAFEWAY") wrongfully terminated her

27 employment without just cause, in violation of her right to be paid wages and benefits earned

28 over years of exemplary service, and to be free from discrimination based on age. UNION

1

Complaint

1  abandoned Plaintiff who was pursuing her grievance for wrongful termination against
2  SAFEWAY.

3      Defendant SAFEWAY INC. ("SAFEWAY") is a Delaware corporation, its corporate
4  headquarters located in Contra Costa County, California.  At all times material herein, Safeway
5  was engaged in a business affecting interstate commerce within the meaning of Section 301 (29
6  U.S.C. § 185) of the Labor Management Relations Act of 1947 ("LMRA" or the "Act") and
7  within the definitions set forth in Sections 2(2) and 501(1) and (3) (29 U.S.C. §§ 152(5), 142(1),
8  and (3)).

9      Defendant LOCAL 5 UNITED FOODS AND COMMERCIAL WORKERS UNION
10 ("UFCW#5" or "UNION")  is a labor organization representing employees. Plaintiff's union
11 representatives are locatable at a UNION office maintained in Marin County, California.
12 UNION was the recognized collective bargaining representative of Plaintiff as an employee of
13 SAFEWAY.  At all times material herein, UNION  was engaged in a business affecting interstate
14 commerce within the meaning of Section 301 (29 U.S.C. § 185) of the Labor Management
15 Relations Act of 1947 and within the definitions set forth in Sections 2(2) and 501(1) and (3) (29
16 U.S.C. §§ 152(5), 142(1), and (3)).

17     Defendants sued herein as DOES 1-50, inclusive, are sued under fictitious names.  The true
18 names and capacities of these Defendants are unknown to Plaintiff. When the true names and
19 capacities are ascertained, Plaintiff will amend this complaint by inserting the true names
20 capacities of the Defendants.  Plaintiff is informed and believes that each of the fictitiously
21 named Defendants designated herein are responsible in some manner for the acts and events
22 hereinafter alleged.

23                    **JURISDICTION AND VENUE**

24     This Court is the proper court to hear matters arising out of or involving a federal question
25 (Section 301 of the Labor Management Relations Act, 29 U.S.C., § 185).  This Court has
26 supplemental jurisdiction over MCNABOE's remaining state law claims (28 U.S.C. § 1331).
27 Venue is appropriate with this Court because all defendants live in California and a substantial
28 part of the events herein occurred within this district.  The San Francisco/Oakland Division is

Complaint

1   appropriate as both Plaintiff and Defendants do business in Marin County, and a substantial part

2   of the events herein occurred within Marin County.

3                       **STATEMENT OF FACTS AND CLAIMS**

4   Plaintiff McNaboe

5       Laura McNaboe is a 58 year old woman, married, mother of four children (one deceased),

6   and grandmother of one.  She had expected to work for SAFEWAY at least until the age 65.  She

7   is an esteemed member of her community, active in leadership positions in numerous

8   organizations.  Her 64 year old husband has recently had to leave his work as a truck driver due

9   to rib and shoulder injuries.  Plaintiff has worked in the food retailing industry most of her adult

10  life, as did her brother, mother and her uncle.  She first worked at SAFEWAY (1974) as a

11  General Merchandise Clerk, and then at UNION's request accepted a position at Cala Foods

12  (1974-1981).  She was a member of UNION for over six years.  Beginning in 1994, she was

13  employed by SAFEWAY at Safeway Store # 1723, in San Anselmo, California.  She was a

14  member of UNION for the whole period that she was employed by SAFEWAY.

15      While employed by SAFEWAY, MCNABOE has held positions as Journeyman Food clerk,

16  Head Cashier, Head Booth and Customer Service Manager and Journeyman.  Within two years

17  prior to her wrongful termination, MCNABOE was paid at the Head Clerk rate.  SAFEWAY

18  withdrew and reduced MCNABOE's Head Clerk earning level to the Journeyman Food Clerk

19  rate.  At the time of her wrongful termination she was earning at the highest hourly rate allowed

20  Journeyman Food Clerk UNION members under the collective bargaining agreement between

21  UNION and SAFEWAY.

22      At the time her employment was wrongfully terminated MCNABOE was less than one year

23  short of contractual eligibility for "full retirement" including, a pension based on lifetime

24  earnings as well as continuing medical benefits.  Until her wrongful termination, her family's

25  medical benefits were earned by her as part of her employment compensation with SAFEWAY.

26      At the time of her wrongful termination, MCNABOE was the experienced, knowledgeable,

27  senior employee others called on days she was not working, to get advice as to how to solve

28  store problems.  She was never compensated for the time she spent on those SAFEWAY matters.

                                      3

1    During the whole length of her employment by SAFEWAY, Plaintiff earned exceptional
2  employee performance appraisals, consistently earning high and highest marks for individual and
3  personal attention to customers, loyalty, presentation, anticipating customer needs, helpfulness,
4  teamwork, extreme high knowledge of her job and customer service, professionalism, teamwork,
5  follow through, problem solving and dependability. She was virtually never absent from her post.
6  She literally loved her job, was devoted to her co-workers and was regularly pointed to as the
7  exemplary employee. Until she was falsely accused of wrongdoing, the only "violations" of
8  SAFEWAY policy in her record (two occasions in 17 years) was working too many hours before
9  taking a lunch break.

10  Defendant Safeway

11   SAFEWAY is one of the largest food and drug retailers in North America based on sales. It is
12  a Fortune 100 company. As of June 15, 2013, the company operated 1,412 stores in the Western,
13  Southwestern, Rocky Mountain and Mid-Atlantic regions of the United States and 223 in
14  Western Canada. SAFEWAY is the market leader in the San Francisco, California metropolitan
15  area. Assuming 40 hours per week for 52 weeks in the year, its highest paid executives earn
16  equivalent hourly pay of $5,241. MCNABOE's highest rate of hourly pay was $21.13.

17   In 2011, SAFEWAY reported annual sales of $43,600,000,000. SAFEWAY's common stock
18  is traded on the New York Stock Exchange under the symbol "SWY." Diluted annual earnings
19  per share in 2011 were reported as $1.76 and in 2012 as having increased to $2.15. As of June
20  14, 2013, the company's most recent quarterly dividend to shareholders was $0.20 per share on
21  each of 239,500,000 outstanding shares. One area analysts have marked as responsible for its
22  growth is the capping of growth in its operating and labor expenses. One way SAFEWAY may
23  be accomplishing that financial fact is by seeking out pretexts to terminate "expensive," senior
24  and close to retirement employees like MCNABOE.

25   In November 2012, SAFEWAY announced it had reached a new three year labor agreement
26  with UNION representing SAFEWAY's employees in Northern California. "This new
27  agreement provides our employees with among the best wages, benefits and working conditions
28  in the region, while ensuring the company can compete successfully in the future," said Karl

1   Schroeder, President of Safeway's Northern California Division. The agreement also provides
2   that Safeway will remain in the health and welfare fund, jointly administered by union and
3   employer trustees, for the term of the agreement for all eligible employees and retirees.
4   MCNABOE has both earned through excellent and loyal service and the payment of dues the
5   right to participate in the new agreement and enjoy the full benefits of her long time work with
6   SAFEWAY and the UNION.

7        SAFEWAY also publishes and purports to operate under a Code of Business Conduct and
8   Ethics and requires all of its employees, officers and directors to take affirmative steps to carry
9   out SAFEWAY's business honestly, ethically and fairly. SAFEWAY did not act honestly,
10  ethically and fairly in the matter of the termination of its long term, loyal employee MCNABOE.

11       SAFEWAY did not act honestly, ethically and fairly when its managers falsely accused
12  MCNABOE of theft without cause and then used her confusion over the accusations as "proof"
13  that she had done something wrong. SAFEWAY used this set up as the pretext to fire
14  MCNABOE and to prevent her from completing her service time to earn full retirement pay and
15  benefits.

16  Defendant Union

17       UNION is part of an international union, which represents workers in many similar
18  occupations to MCNABOE's around the United States and Canada. It has 1.3 million members.
19  UNION was formed in 2007 as the result of the merger of 7 locals representing approximately
20  26,000 members working various industries and for various employers in Northern California.

21       UNION is, and at all times hereinafter mentioned was, a labor organization representing
22  employees in an industry affecting commerce as define in Sections 2(5) and 501(1) and (3) of the
23  Labor Management Relations Act (29 USC section 185) hereinafter referred to as the Act, and
24  within the meaning of Section 301 of the Act. During all times herein mentioned, UNION was
25  the recognized collective bargaining representative of MCNABOE. Beginning at a time
26  unknown to Plaintiff, but at all times during her employment with SAFEWAY and in effect at the
27  time of her wrongful termination, UNION entered into a collective bargaining agreement with
28  SAFEWAY, which agreement was in force during the entire period involved herein. The

5

Complaint

1   agreement was entered into by Defendants for the benefit of employees in the bargaining unit,
2   including MCNABOE, and she is accordingly entitled to the benefit of the agreement and to
3   enforce provisions thereof.
4       The collective bargaining agreement with UNION provides that no employee covered by the
5   agreement shall be discharged except for good cause. Further that agreement provides for a
6   grievance procedure which establishes a procedure culminating in binding arbitration, for the
7   presentation, negotiation, settlement, or other disposition of grievance and expressly provides
8   that all cases of discharge, for whatever cause, shall be subject to the grievance procedure.
9       UNION promised MCNABOE (and its other represented members) among other things:
10          THE CONTRACT protects your seniority which will become increasingly important to
11          you the longer you are working for this employer.
12          THE CONTRACT prohibits discipline or discharge by your employer, except for just
13          cause once you have completed your probationary period;
14          THE CONTRACT provides for vacations PAID FOR BY YOUR EMPLOYER and
15          negotiated by the local union;
16          THE CONTRACT provides for health and welfare and pension benefits paid for by your
17          employer and negotiated by the Local Union to take up and to resolve your complaints in
18          a way that gets results; and,
19          THE CONTRACT provides many more benefits, all of which are detailed in the written
20          agreement and negotiated by the Local Union. Perhaps the greatest benefit of being
21          covered by a Local Union contract is the knowledge and security that the provisions
22          cannot be changed whenever the employer decides. No changes can be made without the
23          Local Union's agreement. The Local Union and the employer do negotiate new
24          agreements when the old agreements expire. At that time we seek improvements and
25          better wages and working conditions.
26  UNION did not keep these promises to MCNABOE. It failed to protect her from a perpetual
27  termination that if allowed to stand not only harms her lifetime's reputation for honest,
28  competent work, and relationships built thereon, but may deprive her of significant economic

6

1  benefits, namely pension rights and benefits.  UNION abandoned MCNABOE and did not

2  pursue her grievance against SAFEWAY

3  Termination Event

4      On February 3, 2012, MCNABOE was asked to attend a meeting by her manager Aaron

5  Goldsberry.  In his office she met SAFEWAY District Office security officers,  Paul Gunter  and

6  Gloria Bonjean.  MCNABOE asked if her UNION representative could be called.  Mr. Gunter

7  said no.  MCNABOE requested representation during the meeting.  Mr. Gunter said no.  Over the

8  next hour MCNABOE was subjected to a series of hostile, humiliating interrogatories predicated

9  on an assumption that she had lost or stolen store funds.  MCNABOE was extremely intimidated

10  by the questioning which made her feel overwhelmed, frightened, embarrassed, and confused.

11  MCNABOE's demonstrable explanations for the data entry errors which fully accounted for the

12  alleged missing funds were ignored.

13      Her denial of wrongdoing was deemed insufficient, MCNABOE at first believed, because

14  she was emotionally overwrought during the interrogation.  Mr. Gunter mocked her emotional

15  state and said "you sound like a 6 month old booth clerk."  MCNABOE asked for more time to

16  compose herself and to continue the meeting at a time both when her thoughts and emotions

17  were more organized and when the books and records (and security tapes) essential to analyze

18  the circumstances of alleged wrongdoing could be readily available.  Mr. Gunter denied that

19  request.

20      As the meeting drew to a close, Ms. Bonjean instructed MCNABOE she could now (and

21  should) "contact your union."  Mr. Gunter then stated that MCNABOE was suspended pending

22  investigation.  He threatened MCNABOE: "If you fight this, we will find this much more"

23  standing and gesturing to shoulder height.  At his request, MCNABOE gave Mr. Gunter her

24  employee ID, her manager override card and her store keys.  Once she had done so, Mr. Gunter

25  stated, "as far as I am concerned, this investigation is over."  MCNABOE was told she could not

26  return to work or to the store.

27      When MCNABOE returned home from work that day, her husband feared for her health and

28  safety.  MCNABOE's emotional state was that of the victim of a severe trauma.  "It was as if she

7

1    had been raped."

2    SAFEWAY instructed its managers to "make salary" budget goals by among other means,

3    reducing the number of fulltime Journeyman clerks on payroll.  On February 3, 2012,

4    MCNABOE was a full time journeyman food clerk. After her wrongful termination, she was

5    replaced in her position by younger employees, with less seniority, and a lower earning potential

6    due to their lack of Journeyman status. The accusations of wrongdoing were a pretext to remove

7    MCNABOE from her position and deny her the opportunity to complete the years of service

8    necessary to qualify for retirement pay and benefits.

9    MCNABOE contacted UNION by or before February 6, 2012.  She reported the events as

10    they occurred on February 3, 2012 and denied wrongdoing.  Carl N. Nakano, Director, Grievance

11    Department of UNION wrote the following to SAFEWAY:

12    It has come to our attention that Laura McNaboe has been suspended/terminated.  Pursuant to
      Section 18 of the current Master Food Agreement, it is our desire to convene a Board of
13    Adjustment for the purpose of judging the merits of this grievance. [¶]  It is requested that
      Laura McNaboe be reinstated to her former position without loss of pay, seniority or any
14    other conditions jeopardized by the suspension/termination until a determination can be made.
      The Union requests that the Company provide specific reasons for said
15    suspension/termination in writing no later than three (3) days prior to a duly convened Board
      of Adjustment as outlined in Section 3.3.2 of the Agreement.  The Union further requests that
16    the Company supply all available material facts involving this matter to the Union on a
17    timely basis in accordance with Section 18.5 of the Collective Bargaining Agreement.

18    MCNABOE was never provided with SAFEWAY's response to Mr. Nakano's demand.

19    On April 5, 2012, MCNABOE reported to UNION that her January 14, 2012 vacation pay

20    had not been remitted until March 29, 2012.  MCNABOE was denied access to medical and

21    dental care and necessary pharmaceutical drugs because SAFEWAY and/or UNION failed to

22    process properly her COBRA benefit.  MCNABOE asked for instruction from UNION as to how

23    she should proceed to recover back pay, to preserve her medical and dental insurance, and

24    whether she was required to pay any additional dues to UNION.  MCNABOE continued to assert

25    her innocence of any wrongdoing, questioned the lawfulness of her termination and asked for

26    help in expediting her return to her work at SAFEWAY and "to the life that I loved living."

27    On April 16, 2012, SAFEWAY District Manager Reino Bellio wrote MCNABOE and

28    officially terminated her nearly 18 years of outstanding, flawless service with one sentence:

8

1  "This is notification that you have been terminated from Safeway for violation of company
2  policies and procedures."

3      A Board of Adjustment meeting was held on April 26, 2012. MCNABOE was again
4  subjected to hostile, intimidating and insulting interrogatories by SAFEWAY. She was
5  threatened with dire consequences because "she was under oath." (She was not). The parties
6  failed to resolve the dispute. The UNION acknowledged that MCNABOE had not had a full and
7  fair opportunity to address SAFEWAY's allegations regarding "incidents" alleged on December
8  31, 2011, January 1, 2012 and January 4, 2012.

9  UNION abandoned MCNABOE

10      On May 9, 2012, UNION representative Deborah Chesbrough assured MCNABOE that
11  UNION had not forgotten her or her case.

12      On May 24, 2012, UNION informed MCNABOE her case was deadlocked and would be
13  reviewed by the Grievance Director and/or Attorney for possible Arbitration.

14      On July 2, 2012, UNION informed MCNABOE that her matter was being considered by the
15  Grievance Department, and they would get back to her.

16      On August 30, 2012, UNION informed MCNABOE that it believed in her but have been tied
17  up in negotiations.

18      On October 17, 2012, MCNABOE asked UNION if it had abandoned her. That same day,
19  UNION, through Representative John Rossi, stated "NO. As I have stated many times,
20  negotiations tend to delay selecting arbitration dates. Unfortunately we have been in
21  negotiations with Safeway for just over a year now which to the best of my knowledge has never
22  happened before. [¶] As soon as I have a date I will let you know."

23      On February 11, 2013, MCNABOE reminded UNION that she had not heard from them
24  since October 2012. "It was one year ago, February 3, 2012, and still nothing has been done.
25  This is not okay… I am requesting information on the schedule for moving forward with this
26  grievance. There must be deadlines!! Have you abandoned me and my grievance" What is going
27  on? Please respond as soon as possible."

28      On February 18, 2013, MCNABOE spoke with Carl Nakano, UNION's Grievance Director.

1    He represented that UNION would meet with SAFEWAY to set a date with arbitrators to discuss

2    pending cases and did not know of any case outstanding longer than hers.  He assured her that

3    she would eventually have her back pay restored, and if not her position, her full retirement

4    including medical benefits.

5         Since February 2013, MCNABOE has heard nothing further from SAFEWAY or UNION.

6                              **FIRST CAUSE OF ACTION**

7         **Damages for Unlawful Discharge and Breach of Union's Duty of Fair Representation**

8                              **(Against all Defendants)**

9         Plaintiff incorporates the preceding paragraphs as if set forth here in full.

10        Plaintiff has requested, but has not been provided with, a copy of the collective bargaining

11   agreements between SAFEWAY and UNION.  It is her understanding that all of the following is

12   true:

13        SAFEWAY and UNION entered into a collective bargaining agreement (CBA) covering

14   specified employees, including MCNABOE, in various bargaining units, which agreement was

15   enforced during the relevant times to this claim for damages.  Both defendants have copies of the

16   voluminous CBA.  The CBA was entered into by the defendants for the benefit of the employees

17   in the bargaining units, and plaintiff, as a member thereof, is accordingly entitled to the benefits

18   of the agreement and to enforce the provisions thereof.

19        Further, plaintiff understands and believes that the CBA establishes a procedure, culminating

20   in binding arbitration, for the presentation, negotiation, settlement, or other disposition of

21   grievances, and expressly provides for time limits, good faith efforts to resolve issues, exchange

22   of necessary and relevant information and selection of an impartial arbiter.

23        As set forth above, plaintiff was discharged by SAFEWAY on April 16, 2012, prior to the

24   convening of a Board of Adjustment, and prior to completion of any investigation or meaningful

25   opportunity for plaintiff to defend herself of the unjust and false accusations of malfeasance,

26   and/or violation of SAFEWAY policy and procedure. Plaintiff alleges that the true reason for her

27   discharge was her seniority and imminence of retirement, which SAFEWAY no longer wished to

28   honor and did not wish to pay for.  Thus SAFEWAY created a pretextual reason to prevent her

                                        10

Complaint

1  from completing her mandatory years of service before she was fully eligible to enjoy the

2  retirement with pay and benefits for which she had worked diligently and loyally.

3      Plaintiff protested her discharge. She met with SAFEWAY representatives during a Board of

4  Adjustment meeting where the parties deadlocked. She was entitled to further administrative

5  process and an opportunity to be heard, but no such further process has occurred. She was

6  entitled to arbitration of her grievance and to challenge the factual basis for her termination

7  including an opportunity to demonstrate that the termination was not for good cause, but no such

8  arbitration has been scheduled. UNION has further failed to apprise her of any actions it has

9  taken on her behalf since February 2013.

10     Plaintiff therefore alleges that UNION, in breach of its statutory duty of fair representation

11  owed to plaintiff under the provisions of the Act and the collective bargaining agreement, failed

12  and refused to demand arbitration to challenge plaintiff's discharge, although there was no just

13  cause or reason therefore, and that UNION's refusal to arbitrate was carried out in a bad faith and

14  perfunctory manner, for reasons which were arbitrary, dishonest and irrational. Further, UNION

15  either failed to investigate plaintiff's grievance or failed to conduct any type of meaningful

16  investigation (which would have required plaintiff's participation and knowledge) or challenge to

17  plaintiff's termination. Nor did UNION make any reasonable efforts to obtain documentation to

18  rebut the phony allegations of violations of policy and procedure being leveled against plaintiff.

19  Instead, UNION by failing to act has acquiesced in plaintiff's discharge for its own ulterior

20  motives in breach of its duty to fairly represent plaintiff.

21     As a result of plaintiff's wrongful discharge and UNION's violation of plaintiff's rights under

22  the CBA, and in breach of UNION's duty of fair representation owed to plaintiff, plaintiff has

23  suffered, and will continue to suffer, grievous and extensive injuries, including past and future

24  wage loss, past and future fringe benefit loss, damage to her professional reputation, and

25  impairment of her ability to find subsequent employment, and severe emotional distress. The

26  amount of these damages is ongoing and is subject to proof at trial.

27     The above facts, if proven to be willfully intended to injury plaintiff, warrant imposition of

28  punitive damages against UNION and SAFEWAY.

Complaint

## SECOND CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### California Gov. Code § 12940, California Constitution, Art. 1, §

### (Against SAFEWAY)

Plaintiff incorporates the preceding paragraphs as if set forth her in full.

Firmly established public policy of this state demands that employers not terminate employees in order to avoid paying wages and benefits earned, and in the case of senior employees, that employers not terminate employees in order to avoid paying pension benefits.

Firmly established public policy of this state forbids discrimination against older workers, like MCNABOE.

SAFEWAY had a policy of discriminating against older and more senior workers, demonstrated by failure to train and maintain up to date standards and protocols, including training for older and senior employees, by applying the harshest penalties to older and senior workers for minor infractions, and by a pattern and practice of replacing older and senior workers with younger and less senior workers.

As a result of plaintiff's wrongful discharge and SAFEWAY's violation of plaintiff's rights under firmly established state public policy, plaintiff has suffered, and will continue to suffer, grievous and extensive injuries, including past and future wage loss, past and future fringe benefit loss, damage to her professional reputation, and impairment of her ability to find subsequent employment, and severe emotional distress. The amount of these damages is ongoing and is subject to proof at trial.

The above facts, if proven to be willfully intended to injury plaintiff, or proved to be oppressive, malicious and despicable conduct, warrant imposition of punitive damages against SAFEWAY.

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against SAFEWAY)

Plaintiff incorporates the preceding paragraphs as if set forth here in full.

12

Complaint

1    SAFEWAY's conduct was outrageous and outside the normal scope of the employment
2    relationship. SAFEWAY knew that firing MCNABOE in light of unproven and false accusations
3    of wrongdoing, without process guaranteed by the collective bargaining agreement, and without
4    just cause would result in MCNABOE's emotional distress, and said conduct was intentional or
5    perpetrated with reckless disregard of probability of inflicting humiliation, mental anguish, and
6    severe emotional distress upon plaintiff.

7    Such conduct did result in severe emotional distress to MCNABOE. As a direct and
8    proximate result of this intentional or reckless conduct, MCNABOE has suffered extreme stress,
9    worry, anxiety, shock, shame, and substantial economic damages in an amount to be determined
10   at trial.

11   SAFEWAY's conduct toward plaintiff was wanton, willful, and intentional, with malicious
12   and reckless disregard for the rights and sensibilities of plaintiff, all of which entitles her to
13   punitive damages.

14                              **FOURTH CAUSE OF ACTION**
15                         **Negligent Infliction of Emotional Distress**
16                                   **(Against SAFEWAY)**

17   Plaintiff incorporates the preceding paragraphs as if set forth here in full.

18   At all relevant times, SAFEWAY owed MCNABOE a duty of care. SAFEWAY's conduct, as
19   alleged above was negligent and outrageous and outside the normal scope of the employment
20   relationship. SAFEWAY knew or should have known that firing MCNABOE in light of
21   unproven and false accusations of wrongdoing, without process guaranteed by the collective
22   bargaining agreement, and without just cause would result in MCNABOE's serious emotional
23   distress, and said conduct was nevertheless perpetrated by SAFEWAY, with reckless disregard of
24   the probability of inflicting humiliation, mental anguish, and severe emotional distress to
25   plaintiff. As a direct and proximate result of SAFEWAY's infliction of emotional distress,
26   MCNABOE suffered general damages and economic damages in an amount to be determined at
27   trial.

28   SAFEWAY's conduct toward MCNABOE was malicious, willful and with reckless disregard

                                              13
Complaint

1    for the rights and sensibilities of plaintiff, which entitles her to punitive damages.

2                                               **PRAYER**

3    WHEREFORE, MCNABOE demands judgment against defendant as follows:

4    a. For all economic damages, including but not limited to, past and future wage and benefit

5         losses, impaired earning potential, and consequential damages which are ongoing and

6         subject to proof at trial, but MCNABOE contends to be in an amount in excess of

7         $1,000,000 (U.S. One million Dollars);

8    b. For all noneconomic damages which are ongoing and subject to proof at trial.

9    c. Punitive damages with respect to the statutory and tort claims set forth above in an

10        amount being just;

11   d. For an award of reasonable costs and attorney's fees as permitted by statute or contract;

12        and        .

13   e. For reinstatement to her former or comparable position with no break in seniority, and all

14        other equitable and legal relief to which plaintiff is entitled, including injunctive orders,

15        back pay, and other appropriate "make whole" relief.

16                                   DEMAND FOR JURY TRIAL

17   MCNABOE hereby demands a jury trial for all claims for which a jury is permitted.

18

19   September 9, 2013                                WEEMS LAW OFFICES

20

21                                                   Robert C. Weems, attorneys for Plaintiff
                                                     Laura McNaboe
22

23

24

25

26

27

28

Complaint